# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**MICHAEL MARTIN,**

      **Plaintiff,**

**v.**                                       **No. CIV-12-1128 LAM**

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 20)*, filed June 3, 2013. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 17* and *18*]. On July 3, 2013, Defendant filed *Defendant's Response to Plaintiff's Motion to Remand or Reverse (Doc. 23)*, and, on July 24, 2013, Plaintiff filed his *Reply to Defendant's Response to Plaintiff's Motion to Remand or Reverse (Doc. 24)* and *Notice of Completion of Briefing (Doc. 25)*. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 13*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

# I. Procedural History

On August 4, 2009, Plaintiff filed respective applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging that he became disabled on January 1, 2008. [*Doc. 13-6* at 2-3 and 4-7]. Plaintiff stated that he became disabled due to: "[m]ood disorder, affective disorder, bi polar and suicidal and homicidal." [*Doc. 13-8* at 43]. The applications were denied at the initial level on May 24, 2010 (*Doc. 13-5* at 2-5 and 6-9) and at the reconsideration level on September 2, 2010 (*id.* at 10-12). Pursuant to Plaintiff's request (*id.* at 15-16), on November 23, 2011, Administrative Law Judge James A. Burke (hereinafter "ALJ") conducted a hearing. [*Doc. 13-3* at 46-56]. At the hearing, Plaintiff was represented by counsel (*id.* at 48), and testified (*id.* at 50-56).

On December 6, 2011, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled. [*Doc. 13-3* at 33-40]. Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 22-23), and, on September 4, 2012, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner. On November 1, 2012, Plaintiff filed his complaint in this case. [*Doc. 1*].

# II. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's

findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on November 27, 1968.  [*Doc. 13-6* at 4].  In approximately 1988, Plaintiff completed his GED.  [*Doc. 13-8* at 47].  Plaintiff has worked as a driver for several different types

of businesses and for various companies. [*Doc. 13-8* at 44]. Plaintiff alleges that he became disabled on January 1, 2008, and that he is unable to work because of the following conditions: "[m]ood disorder, affective disorder, bi polar and suicidal and homicidal." *Id.* at 43.

Plaintiff's medical records document treatment and records from: University of New Mexico (hereinafter "UNM") Hospital/UNM Health Sciences Center/UNM Psychiatric Center (*Doc. 13-11*), (*Doc. 13-12* at 2-25), (*Doc. 13-14* at 2-27), (*Doc. 13-17*), (*Doc. 13-18*), (*Doc. 13-19*), (*Doc. 13-20*), (*Doc. 13-21*), (*Doc. 13-22*), (*Doc. 13-23*), (*Doc. 13-24*); Kaseman Presbyterian Hospital (*Doc. 13-12* at 32-43), (*Doc. 13-13* at 8-18), (*Doc. 13-15*), (*Doc. 13-16*); and Partners in Wellness (*Doc. 13-25*).

Plaintiff's medical records also include: a Consultative Examination by Cathy L. Simutis, Ph.D., dated May 3, 2010 (*Doc. 13-13* at 20-22); a Mental Residual Functional Capacity Assessment by Elizabeth Chiang, M.D., dated May 21, 2010 (*id.* at 23-26); a Psychiatric Review Technique by Elizabeth Chiang, M.D., dated May 21, 2010 (*id.* at 27-40); two Case Analyses, one by Mark A. Werner, M.D., dated July 28, 2010 (*Doc. 13-14* at 28), and one by Jill Blacharsh, M.D., dated August 27, 2010 (*id.* at 29). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of January 1, 1989.[1]

---

[1]Plaintiff contends that the ALJ's assertion that Plaintiff's alleged disability onset date is "January 1, 1989" (*Doc. 13-3* at 35) appears to be a typographical error, since Plaintiff alleges in his applications that he became disabled on January 1, 2008 (*see Doc. 13-6* at 4 and *Doc. 13-8* at 43). *See* [*Doc. 20* at 2, n.3]. This does not appear to be a typographical error because the ALJ states that "Plaintiff protectively filed a DIB application on August 6, 1985, and an SSI application on August 3, 2009," and that "[i]n both applications, the claimant alleged disability beginning January 1, 1989." [*Doc. 13-3* at 33]. Neither of these applications is included in the record before the Court. The SSI application before the Court is dated August 4, 2009, and alleges a disability onset date of January 1, 2008. *See*
(continued...)

[*Doc. 13-3* at 35]. At step two, the ALJ found that Plaintiff has the following severe impairments: "adjustment disorder with depressed mood, personality disorder, and history of polysubstance abuse in early remission." *Id.* At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 36-37.

Before step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "[Plaintiff] can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors with limited contact with the public and brief superficial interactions with co-workers, and respond appropriately to changes in a work setting." *Id.* at 37. In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." *Id.* at 38. The ALJ stated that Plaintiff "has not generally received the type of mental health treatment one would expect for a totally disabled individual," and that "[t]he record does not

---

[1](...continued)
*Doc. 13-6* at 4. The Social Security Administration explains that: "Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date." See Social Security Disability Resource Center http://www.ssdrc.com/disabilityquestionsmain20.html, last accessed November 7, 2013. In addition, the Case Analyses in the record refer to Plaintiff's alleged onset date as January 1, 1989. *See* [*Doc. 13-14* at 28 and 29]. Regardless, Plaintiff's disability onset date is not raised as an issue by either party and does not appear to have affected the ALJ's decision.

contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in this decision." *Id.* at 38-39. The ALJ noted that Plaintiff was seen at the UNM emergency room in December 2004 and March 2005 for suicidal ideation. *Id.* at 38 (citing *Doc. 13-11* at 22 and 26). The ALJ further noted that medical records from UNM and Presbyterian "from 2004, 2005, 2007, 2009 [and] 2010 provide no indication of limitations or impairments," and, instead, the ALJ found that these records "evidence routine care[,] health maintenance, minor wounds, and snakebite." *Id.* (citing *Doc. 13-11* at 2-26, *Doc. 13-12* at 2-43, *Doc. 13-13* at 2-14, *Doc. 13-14* at 2-27, and *Doc. 13-15* at 2-34). The ALJ stated that the psychological consultative examination by Cathy Simutis, Ph.D. "provides diagnoses of alcohol abuse, poly substance [sic] abuse, adjustment disorder with depressed mood, and personality disorder," and that Dr. Simutis "opined [that Plaintiff's] ability to understand and remember instruction is mildly limited, his ability to concentrate and persist in a task is mildly limited, his ability to interact with co-workers and the public is moderately limited, and his ability to adapt to change is not limited." *Id.* The ALJ stated that he gave "considerable weight" to the mental residual functional capacity assessment and psychiatric review technique completed by the state agency consultants in May 2010, and found them to be consistent with his RFC findings. *Id.* At step four, the ALJ found that Plaintiff was unable to perform any past relevant work, so the ALJ proceeded to the fifth step. *Id.* at 39.

At the fifth and final step, the ALJ noted that Plaintiff was 20 years old at the time of his alleged disability onset date of January 1, 1989,[2] has at least a high school education, and is able to communicate in English. *Id.* The ALJ stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills." *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. [*Doc. 13-3* at 39]. The ALJ stated that Plaintiff has nonexertional limitations, but those "limitations have little or no effect on the occupational base of unskilled work at all exertional levels." *Id.* The ALJ stated that he reviewed Soc. Sec. Rep. 85-15 and found that Plaintiff's "mental impairments have only slight effect on occupational base." *Id.* at 40. The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V. Analysis

Plaintiff contends that the ALJ erred in his RFC assessment by failing to discuss all of the relevant evidence in the record and by failing to properly analyze the opinion of state-agency consultant Dr. Chiang. [*Doc. 20* at 15-20]. Plaintiff also contends that the ALJ incorrectly applied

---

[2]Plaintiff states that the ALJ's statement that Plaintiff was 20 years old at the time of his alleged disability onset date appears to be an error because Plaintiff was 39 years old on his alleged disability onset date of January 1, 2008. *See* [*Doc. 20* at 2, n.3]. As explained in footnote 1 above, since the ALJ appears to have found that Plaintiff's alleged disability onset date is January 1, 1989 based on earlier applications by Plaintiff that are not part of the record before the Court, the ALJ's statement that Plaintiff was 20 years old on his alleged disability onset date does not appear to be an error. Nevertheless, this does not change Plaintiff's age category, since a younger individual is defined as a person under age 50. *See* 20 C.F.R. §§ 404.1563(c) and 416.963(c).

Soc. Sec. Rep. 85-15 at step five. [*Doc. 20* at 21-22]. Plaintiff asks the Court to reverse and remand his case for a rehearing. *Id.* at 22. Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because the ALJ's RFC determination was proper and the ALJ properly applied Soc. Sec. Rep. 85-15. [*Doc. 23* at 3-14].

### A. The ALJ's RFC Assessment

#### *1. Relevant Evidence*

Plaintiff first contends that the ALJ erred in his RFC assessment by: (1) omitting any discussion of Plaintiff's March 2011 psychiatric hospitalization (*Doc. 20* at 15-16); and (2) failing to consider Plaintiff's Global Assessment of Functioning scores ranging from 40 to 50[3] (*id.* at 16-17). In response, Defendant states that the ALJ's failure to discuss Plaintiff's 2011 hospitalization is not reversible error because the ALJ is not required to discuss every piece of evidence, and, even if the omission was error, it was harmless error because the medical report that was omitted was consistent with the ALJ's findings. [*Doc. 23* at 10-11] (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) and *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012)). Defendant also contends that the ALJ's lack of discussion of Plaintiff's reported GAF scores is not reversible error because it is clear that the ALJ did not credit the scores, and the evidence demonstrates that Plaintiff was able to engage in significant work activity during the relevant time period and maintained a very active lifestyle despite his low GAF scores, so there was

---

[3]The Global Assessment of Functioning (hereinafter "GAF") score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning. DSM-IV-TR at 32. A GAF score within the range of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* at 34. A score between 41 and 50 indicates "[s]erious symptoms," such as "suicidal ideation, severe obsessional rituals, [or] frequent shoplifting," or "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

no harm in failing to discuss the scores. [*Doc. 23* at 11-12] (citing *Keyes-Zachary*, 694 F.3d at 1164 and *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010)).

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); *see also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, medical signs and laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *5. With regard to mental impairments, the ALJ's "determination of [a claimant's] mental RFC involves the consideration of evidence, such as: [h]istory, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension." Soc. Sec. Rep. 85-16, 1985 WL 56855 at *2. In addition, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7.

Here, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "[Plaintiff] can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors with limited contact with the public and brief superficial interactions with co-workers, and respond appropriately to changes in a work setting." [*Doc. 13-3* at 37]. However, in discussing the evidence supporting his RFC determination, the ALJ makes no mention of Plaintiff's 2011 hospitalization. This hospitalization appears to have begun on February 28, 2011, with a psychiatric consultation. *See* [*Doc. 13-18* at 24-27]. The record includes numerous treatment notes from this time period, including follow up consultations until April 29, 2011. *See* [*Doc. 13-18* at 15-59], [*Doc. 13-20* at 27], [*Doc. 13-21* at 2-10, 23-30, 37-39], and [*Doc. 13-22* at 2-3, 6-8)]. The record also includes notes regarding a possible suicide attempt (*see Doc. 13-18* at 36), and includes opinions by Dr. Jory Mazzola that Plaintiff was depressed, had poor to fair insight and judgment, and was unable to express emotion (*see Doc. 13-21* at 5 and 24). The ALJ also makes no mention of any of Plaintiff's GAF scores, which include scores of: 50 on May 3, 2010 (*Doc. 13-13* at 20-21), August 11, 2010 (*Doc. 13-16* at 6), March 7, 2011 (*Doc. 13-21* at 3, 6), and April 1, 2011 (*id.* at 23-24); 40 on May 18, 2010 (*Doc. 13-14* at 18); and 42 on February 28, 2011 (*Doc. 13-18* at 24, 26).

The Court finds that the ALJ erred in failing to discuss the evidence from Plaintiff's February/March 2011 hospitalization and Plaintiff's GAF scores. The Court rejects Defendant's contention that it was harmless error for the ALJ to not discuss Plaintiff's February/March 2011 hospitalization or GAF scores because that evidence is consistent with the ALJ's RFC assessment.

*See* [*Doc. 23* at 10-11]. On the contrary, the ALJ's RFC assessment fails to take into account Dr. Mazzola's opinions regarding Plaintiff's insight and judgment. While Defendant points out that Dr. Mazzola observed "that Plaintiff was calm and cooperative, demonstrated no psychomotor agitation or retardation, was alert and oriented, had normal speech, and had a content mood with congruent affect," and that Plaintiff denied current suicidal or homicidal ideation, delusions or hallucinations (*Doc. 23* at 10-11), this explanation is an improper *post hoc* rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons for giving less weight to or rejecting the treating physician's opinion" after the fact) (citation omitted).

The ALJ's RFC assessment also fails to take into account Plaintiff's GAF scores which are consistently in the 40 to 50 range, indicating serious to major impairments in communication, judgment, thinking, and mood. Defendant relies on the Tenth Circuit's holding in *Keyes-Zachary*, wherein the Tenth Circuit found that the ALJ committed harmless error in failing to discuss all of the medical opinions in the record. [*Doc. 23* at 10-11]. That case is distinguishable, however, because, in *Keyes-Zachary*, the Tenth Circuit found that the plaintiff did not identify any inconsistencies between the medical opinions and the ALJ's RFC assessment (*see* 695 F.3d at 1161-62), and, further, the Tenth Circuit found that the ALJ properly relied on a GAF score of 65 which was assessed by an acceptable medical source instead of the claimant's lower GAF scores assessed by only a counselor (*see* 695 F.3d at 1164-65). Here, however, Plaintiff has identified inconsistencies between the ALJ's RFC assessment and the evidence from his February/March 2011

hospitalization and his GAF scores, and all of Plaintiff's GAF scores are in the 40 to 50 range, yet they were ignored. *See* [*Doc. 20* at 16-17] (stating that Dr. Mazzola's opinions "are relevant to [Plaintiff's] ability to perform the mental requirements of jobs, and to his ability to sustain employment without excessive absences," and that Plaintiff's GAF scores "indicated problems related to the ability to hold a job," including, *inter alia*, suicidal thoughts, feelings of anger, frustration, and memory and concentration problems). For these reasons, the Court finds that the ALJ erred by failing to discuss the medical opinions from Plaintiff's February/March 2011 hospitalization and Plaintiff's GAF scores, and this case should be remanded so the ALJ can properly address those opinions and scores.

### *2. Dr. Chiang's Opinion*

Plaintiff next contends that the ALJ erred by failing to consider the opinions of state-agency consultant Dr. Chiang, who found that Plaintiff has moderate limitations in: working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. [*Doc. 20* at 17-18] (citing *Doc. 13-13* at 23-24). In response, Defendant states that Dr. Chiang's assessment is consistent with the ALJ's

RFC assessment, so it was not error for the ALJ to not discuss Dr. Chiang's opinions. [*Doc. 23* at 12-13].

The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The ALJ's RFC assessment does not take into account Dr. Chiang's findings of moderate limitations, and the Court finds that the ALJ's failure to explain why he rejected these findings is in error. The ALJ found that Plaintiff could interact adequately with supervisors, which conflicts with Dr. Chiang's finding of a moderate limitation accepting instructions and responding appropriately to criticism from supervisors. *Compare* [*Doc. 13-3* at 37] *with* [*Doc. 13-13* at 24]. The ALJ's finding that Plaintiff can respond appropriately to changes in a work setting also conflicts with Dr. Chiang's finding that Plaintiff has moderate limitations with that ability. *Id.* As the Tenth Circuit explained in *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment. The Court notes that Dr. Chiang appears to contradict her findings in Section I that Plaintiff has moderate limitations in his abilities to interact with co-workers and supervisors and to respond appropriately to changes in a work setting, by stating in Section III that Plaintiff can interact adequately with co-workers and supervisors and can respond appropriately to changes in a work setting. *Compare* [*Doc. 13-13* at 24] *with id.* at 26. However, the ALJ fails to address this discrepancy in his opinion, and an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*,

537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted); *see also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") and *Haga*, at 1208 ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on [the state agency consultant's] RFC assessment while appearing to adopt the others."). The Court, therefore, instructs Defendant that, on remand, the ALJ shall either incorporate Dr. Chiang's findings into Plaintiff's RFC assessment, or explain why they are rejected, and, if necessary, the ALJ can ask Dr. Chiang to explain the discrepancies in his findings.

### B.  The ALJ's Application of Soc. Sec. Rep. 85-15

Lastly, Plaintiff contends that the ALJ erred by relying on Soc. Sec. Rep. 85-15 at step five of his decision. [*Doc. 20* at 21]. Plaintiff states that the ALJ did not make findings that adequately explain his conclusion that Plaintiff's impairments do not affect his ability to function at work, and, specifically, Plaintiff's difficulties dealing with supervisors, co-workers and the public preclude the ALJ from relying on Soc. Sec. Rep. 85-15. *Id.* at 21-22. Plaintiff contends that the ALJ should have obtained the testimony of a vocational expert instead of conclusively applying the Medical-Vocational Guidelines (hereinafter, "the Grids"). *Id.* at 22. In response, Defendant states that the ALJ properly used the Grids as a framework because the ALJ found that Plaintiff could understand, remember and carry out simple instructions; respond adequately with co-workers, supervisors and usual work situations; and respond appropriately to changes in a routine work setting. [*Doc. 23* at 13]. Defendant further contends that these findings are consistent with the

opinions of Drs. Chiang and Simutis. *Id.* at 14 (citing *Doc. 13-13* at 26, Section III of Dr. Chiang's Mental RFC Assessment).

The Grids provide to the Commissioner "administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.*, sedentary, light, medium, heavy, and very heavy)." *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984) (citing 20 C.F.R. § 404, subpt. P, App. 2, § 200.00(b)). If an individual's age, education, training, and RFC all coincide with the criteria of a particular rule in a Grid, the Commissioner may apply the Grid rule to determine whether or not the claimant is disabled. *Channel*, 747 F.2d at 579. Since a claimant's RFC is one aspect of the Grid rules, it must precisely match the RFC described in the rule. *Id.* at 579-80. Because the Court finds that this case should be remanded for additional proceedings based on the ALJ's RFC assessment, Plaintiff's RFC may change based on the ALJ's consideration of the medical opinions relating to Plaintiff's February/March 2011 hospitalization, Plaintiff's GAF scores, and Dr. Chiang's opinion. The Court, therefore, finds that it is unnecessary to reach Plaintiff's alleged errors regarding the ALJ's application of Soc. Sec. Rep. 85-15 at step five because the ALJ' step-five analysis could be affected by the ALJ's resolution of this case on remand.

## VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the medical opinions relating to Plaintiff's February/March 2011 hospitalization, Plaintiff's GAF scores, and Dr. Chiang's opinion, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's ***Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 20)* is **GRANTED**

and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

    **IT IS SO ORDERED.**

                                                           _____
                                                        **THE HONORABLE LOURDES A. MARTÍNEZ**
                                                        **UNITED STATES MAGISTRATE JUDGE**
                                                         **Presiding by Consent**